NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| LAZZARONI USA CORP., | : | |
| | : | |
| Plaintiff, | : | Civil Action No.  05-4476 (JAG) |
| | : | |
| v. | : | **OPINION** |
| | : | |
| STEINER FOODS, | : | |
| B&R CLASSICS, LLC, and | : | |
| PAOLO LAZZARONI & FIGLI, SpA, | : | |
| | : | |
| Defendants. | : | |

**GREENAWAY, JR., U.S.D.J.**

This matter comes before the Court on the application for a preliminary injunction by Plaintiff Lazzaroni USA Corp. ("Lazzaroni USA").  Lazzaroni seeks to enjoin Defendants B&R Classics, LLC and Paolo Lazzaroni & Figli, S.p.A. (collectively, "Defendants") from infringing its trademarks by using the marks in connection with importing, selling, distributing, or advertising cookies.  For the reasons set forth below, the application for a preliminary injunction will be granted.

**INTRODUCTION**

This dispute involves a famous cookie with a storied history.  Nearly 250 years ago, in Saronno, Italy, the Lazzaroni family celebrated the visit of the Cardinal of Milan by creating a recipe for a special macaroon, which it sold thereafter under the name of "Amaretti di Saronno." The family began use of the trademarks "Lazzaroni" and "Amaretti di Saronno" to sell these

1

cookies in the United States in the early 20th century.  In 1984, the family sold the macaroon business, named D. Lazzaroni & C. S.p.A. ("D. Lazzaroni"), to Campbell's.  Campbell's sold D. Lazzaroni to its current owner, Citterio.  The family retained and continues to own a liqueur business, Defendant Paolo Lazzaroni & Figli S.p.A. ("P. Lazzaroni").

In 1985, D. Lazzaroni obtained federal trademark registration no. 1,364,738 for "Amaretti di Saronno" as a mark for macaroon cookies.  In 1990, D. Lazzaroni obtained federal trademark registration no. 1,593,242 for "Lazzaroni" as a mark for cookies.  Plaintiff Lazzaroni USA exclusively licenses use of these marks from D. Lazzaroni, which manufactures the amaretti cookies in Italy that Plaintiff imports and sells in the United States.  (Ecoffey Cert. Ex. D.)  The license agreement obligates Plaintiff as licensee to take action to stop trademark infringement in the United States.  (Id.)

The P. Lazzaroni and D. Lazzaroni companies enjoyed a cooperative relationship, with D. Lazzaroni making the cookies and P. Lazzaroni making the liqueur, until 2004, when P. Lazzaroni began to manufacture and sell macaroons in Italy.  D. Lazzaroni filed suit in Italy to enjoin P. Lazzaroni's use of the Lazzaroni name on its macaroon packaging, based on its Italian trademark rights.  The Italian court issued an injunction that considerably restricted P. Lazzaroni's use of the family name on its macaroon packaging.

In 2005, P. Lazzaroni began to export macaroons to the United States, sold by Defendants Steiner Foods and B&R Classics, LLC ("B&R").  Plaintiff filed a Complaint, alleging trademark infringement, and an application for a preliminary injunction against Steiner Foods on September 14, 2005, and amended the Complaint to include P. Lazzaroni and B&R as defendants on September 26, 2005.  On September 27, 2005, this Court granted Plaintiff's application through

entry of a consent order, enjoining Steiner Foods from infringing use of the "Lazzaroni" mark. Plaintiff filed the instant application for a preliminary injunction on December 23, 2005.

## ANALYSIS

I.   **Governing Legal Standards**

    A.   <u>Standard for Preliminary Injunction Applications</u>

The grant of injunctive relief is an extraordinary remedy which should be granted only in limited circumstances. <u>Instant Air Freight Co. v. C. F. Air Freight, Inc.</u>, 882 F.2d 797, 800 (3d Cir. 1989). Generally, in determining whether to grant a preliminary injunction or a temporary restraining order, courts in this Circuit review four factors:

> (1) the likelihood that the applicant will prevail on the merits at the final hearing; (2) the extent to which the plaintiffs are being irreparably harmed by the conduct complained of; (3) the extent to which the defendants will suffer irreparable harm if the preliminary injunction is issued; and (4) the public interest.

<u>S & R Corp. v. Jiffy Lube Int'l. Inc.</u>, 968 F.2d 371, 374 (3d Cir. 1992) (citing <u>Hoxworth v. Blinder, Robinson & Co.</u>, 903 F.2d 186, 197-98 (3d Cir. 1990)). The applicant must meet its burden on the first two factors before the Court will consider the third and fourth elements. <u>SI Handling Systems, Inc. v. Heisley</u>, 753 F.2d 1244, 1254 (3d Cir. 1985). All four factors should favor relief before an injunction will issue. <u>S & R Corp.</u>, 968 F.2d at 374, (citing <u>Hoxworth</u>, 903 F.2d at 192).

    B.   <u>Trademark Infringement</u>

In order to prove trademark infringement under the Lanham Act, a plaintiff must show that: 1) the mark is valid and protectable; 2) the mark is owned by Plaintiff; and 3) Defendant's use of the mark is likely to cause confusion as to the source of the goods or services. <u>Freedom

Card, Inc. v. JP Morgan Chase & Co., 432 F.3d 463, 470 (3d Cir. 2005).

When a mark has been continuously used for five years, it becomes incontestable under 15 U.S.C. § 1065. Incontestability is conclusive evidence of the registration, validity, and ownership of a trademark. 15 U.S.C. § 1115(b).

**II.     Plaintiff's application for a preliminary injunction**

    1.     The likelihood of success on the merits

        *A.     Infringement of the "Amaretti di Saronno" federal registration*

The parties do not dispute that, in 2005, P. Lazzaroni began to export amaretti cookies to the United States, and B & R Classics began to sell them. Plaintiff complains that the packaging of Defendants' cookies displays the words "Amaretti di Saronno." Indeed, Defendants themselves submitted evidence that their current cookie packaging displays the phrase "Amaretti di Saronno." (Lazzaroni Dec. ¶¶ 21, 29; Ex. 12.) Plaintiff argues that this use of the mark is likely to cause consumer confusion.

The mark has incontestable status, and so the federal registration is conclusive evidence of Plaintiff's licensor's ownership of the mark and of its validity. 15 U.S.C. § 1115(b). Defendants are using the identical mark. "[T]here is a great likelihood of confusion when an infringer uses the exact trademark. Thus, likelihood of confusion is inevitable, when, as in this case, the identical mark is used concurrently by unrelated entities." Opticians Ass'n of America v. Independent Opticians of America, 920 F.2d 187, 195 (3d Cir. 1990). Plaintiff has made a strong showing of a likelihood of success in proving trademark infringement.

As a defense to infringement, Defendants argue that the registration is subject to

cancellation on three grounds: it is geographically deceptive, generic, and has been abandoned.

                i.       Is the mark geographically deceptive?

As a threshold matter, Defendants argue that the "Amaretti di Saronno" mark is subject to cancellation for being geographically deceptive under 15 U.S.C. § 1052(e). Plaintiff counters that geographic deceptiveness is not an allowed defense to infringement of an incontestable mark, as it is not among the defenses listed in 15 U.S.C. § 1115(b). Defendants argue that even an incontestable mark may be cancelled if the registrant himself causes the mark to become geographically deceptive. K-Swiss Inc. v. Swiss Army Brands, 58 U.S.P.Q.2d 1540 at *10 (T.T.A.B. 2001) ("a registration more than five years old may be cancelled on the ground of geographic deceptiveness if, subsequent to the issuance of the registration, the registrant itself causes the mark to become geographically deceptive"). Defendants have the better argument on this point: one of the key policy goals of trademark law is the protection of the public from deception, and it would not make sense to interpret the Lanham Act to allow owners of marks to deceive the public just because five years have passed. K-Swiss supports this.

Defendants argue that the mark is geographically deceptive because, in Italian, "Amaretti di Saronno" means "macaroons from Saronno." There is no dispute that Plaintiff's cookies are no longer manufactured in the town of Saronno, Italy; they are currently manufactured in a different Italian town. Without more, however, this is insufficient to establish that the mark is geographically deceptive.

The Trademark Manual of Examining Procedure ("TMEP") sets forth the test for determining whether a mark is geographically deceptive. TMEP § 1210.01(c). To refuse registration because a mark has a deceptive geographic term: 1) the primary significance of the

mark must be a generally known geographic location; 2) the goods must not originate from that location; 3) purchasers must be likely to believe that the goods originate from the geographic location; 4) and this belief must be a material factor in the decision to purchase. Id.; see also In re Cal. Innovations, Inc., 329 F.3d 1334, 1338 (Fed. Cir. 2003). The T.T.A.B. has applied a nearly identical test in trademark cancellation proceedings. See, e.g., High Sierra Food Services, Inc. v. Lake Tahoe Brewing Co. Inc., 2003 WL 21206252 (T.T.A.B. 2003); K-Swiss, 58 U.S.P.Q.2d at 1540. Of these four elements, Defendants have offered evidence only of the second. In the absence of any evidence as to the three other elements, Defendants have failed to show a likelihood of success in proving that the mark should be cancelled for geographic deceptiveness.

     ii. Is the mark generic?

A generic mark is subject to cancellation. 15 U.S.C. § 1064(3). Defendants argue that "Amaretti di Saronno" is generic in Italian, meaning "macaroons from Saronno." Defendants contend that the doctrine of foreign equivalents applies and reveals the generic nature of the mark. Yet Defendants have failed to persuade that the doctrine of foreign equivalents applies here.

"[W]hen it is likely that the ordinary American purchaser would stop and translate [a phrase] into its English equivalent," courts apply the doctrine of foreign equivalents to treat words in a foreign language as if they are in English. Palm Bay Imports v. Veuve Clicquot, 396 F.3d 1369, 1377 (Fed. Cir. 2005). Defendants have offered no evidence to support an inference that U.S. consumers are likely to translate the mark, and so the predicate condition for application of the doctrine of foreign equivalents has not been satisfied.

Even if this Court were to apply the doctrine of foreign equivalents, Defendants still have not shown a likelihood of success in proving that the mark is generic. Generic marks function as the common descriptive name of a product class. Two Pesos v Taco Cabana, 505 U.S. 763, 768 (1992). The Third Circuit has held that "[w]hat is 'generic' in trademark law is a word with so few alternatives (perhaps none) for describing the good that to allow someone to monopolize the word would debilitate competitors." Duraco Prods. v. Joy Plastic Enters., 40 F.3d 1431, 1442 (3d Cir. 1994). Defendants did not even argue that this test has been met, no less show a likelihood of success in meeting it.

     iii. Has the mark been abandoned?

In an action for infringement, an incontestible mark is subject to the defense of abandonment. 15 U.S.C. § 1115(b)(2). An abandoned mark is also subject to cancellation. 15 U.S.C. § 1064(3). A trademark has been abandoned if its use has been discontinued with an intent not to resume. 15 U.S.C . § 1127. Three years of non-use gives rise to a presumption of abandonment. Id.

Defendants argue that Plaintiff has stopped using the mark on its packaging. Plaintiff counters by offering a company sales summary which lists substantial sales of "Amaretti di Saronno" cookies in the years 2003, 2004, and 2005. (Ecoffey Reply Cert. Ex. A.) Defendants offered no evidence to support their allegation of abandonment and thus have failed to show a likelihood of success in proving that Plaintiff has abandoned the mark.

  *B.* *Infringement of the "Lazzaroni" federal registration*

Plaintiff claims that the packaging of Defendants' cookies displays the words "Lazzaroni." Defendants do not dispute that the word "Lazzaroni" appears on the packaging of

the macaroons at issue.  Plaintiff argues that this use of the mark is likely to cause confusion.

Like the "Amaretti di Saronno" mark, the "Lazzaroni" mark has incontestable status, and so the federal registration is conclusive evidence of Plaintiff's licensor's ownership of the mark and of its validity.  15 U.S.C. § 1115(b).  Defendants are using the identical mark, so there is a great likelihood of confusion.  Opticians, 920 F.2d at 195.  Plaintiff has made a strong showing of a likelihood of success in proving trademark infringement.

Defendants offer two defenses to the charge of infringement of the "Lazzaroni" mark: 1) they are not using "Lazzaroni" as a mark; and 2) their use of "Lazzaroni" is a fair use.

       i.       Do Defendants use "Lazzaroni" as a mark?

Defendants cite McCarthy for the proposition that if a term is used as an attention-getting symbol, it is likely a mark.  J. THOMAS MCCARTHY, MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION (4th ed.) § 11:46.  Defendants contend that their packaging is designed so that no attention is drawn to the Lazzaroni name; they characterized their only use as being "inconspicuous" on the back of the package.  (Hr'g Tr. 5.)  Defendants went so far as to make this claim in their brief: "And it is not open to credible dispute that 'Lazzaroni' is used merely as part of Paolo Lazzaroni's trade name in very discrete print on the back of its packaging–print which is prefaced by the wording 'Packed by.'"  (Defs.' Br. 18-19.)  This is false, and their claim is disingenuous.  As will be discussed further infra, Defendants themselves submitted an exhibit of their current packaging which shows additional use of the Lazzaroni name on that package.  (Lazzaroni Dec. Ex. 12.)

The evidence of record shows that Defendants have used "Lazzaroni" as an attention-getting symbol, and thus as a mark, on packaging and on sales materials, in ways that are likely

to cause confusion.

Plaintiff submitted two pieces of sales material bearing the mark: a color catalog page, and a B&R price list. (Attachment to DeMarco Reply Cert.; Ecoffey Cert. Ex. I.) Attached to the Demarco Reply Certification is a copy of a color catalog page showing packaging on which the name "Paolo Lazzaroni" is displayed in sizeable letters on the front of the package. (Attachment to DeMarco Reply Cert.) At oral argument, Defendants claimed that, while P. Lazzaroni created the artwork for the flyer and gave it to distributors, it did not actually produce the flyer. (Hr'g Tr. 9.) Defendants also claimed, without dispute from Plaintiff, that such packaging was never used in the United States and that the product imported into the United States does not have the word "Lazzaroni" on the front of the box. Defendants admitted, however, that this catalog page was distributed in the United States. (Id.)

Plaintiff also submitted a B&R wholesale price list, which displays both the words "Amaretti di Saronno" and the Lazzaroni name in large, decorative, attention-getting letters at the very top of the page. (Ecoffey Cert. Ex. I.) The name appears in a line which reads: "Prodotto per Paolo Lazzaroni e Figli spa - Saronno."[1] The American customer who does not read Italian has no way of knowing that this does not associate the listed products with D. Lazzaroni's cookies.

Plaintiff submitted evidence of different versions of P. Lazzaroni's cookie packaging, one with "Paolo Lazzaroni" in fairly large lettering (Ecoffey Cert. Ex. K), and another with "Paolo Lazzaroni" in smaller lettering (Ecoffey Cert. Ex. E.) Plaintiff claims that the packaging with the larger lettering was sent to it by a principal of B&R, Mr. Norman Barnes, as an example

---

[1] In English, this means "Product of Paolo Lazzaroni & Sons S.p.A. - Saronno."

of the packaging it intended to sell and distribute in the United States. (Ecoffey Cert. ¶ 12.) Defendants claim that the only packaging used in the United States has the name in the smaller lettering. (Lazzaroni Cert. ¶ 21.) Even if Defendants have only used the packaging with the smaller lettering in the United States, and even if this Court were to find – which it does not – that this use is insufficiently attention-getting to constitute use of the mark, this does not protect them from an action for infringement. Plaintiff points to two additional infringing uses: 1) use of the mark on sales materials; and 2) the packaging that Defendants admit that they currently use in the United States ("the revised packaging") shows an additional infringing use of the mark.

Defendants' argument that their use of the Lazzaroni name on the revised packaging is not attention-getting is disingenuous. In addition to the use of the name after "Packed by," the text at the center of the back of the box expressly draws attention to the family name:

> Amaretti cookies were created by the Lazzaroni family way back in the Eighteenth century to celebrate the visit of the beloved Cardinal of Milan to the town of Saronno. By slowly baking a blend of sugar, apricot kernals and egg whites they originated the renowned Amaretti di Saronno – a round, crunchy bittersweet almond cookie decorated with sparkling white sugar.

(Id.) At best, this appears to create a serious risk of confusing the consumer. Frankly, it is more than conceivable that this is a blatant attempt to free-ride on the goodwill adhering to the "Lazzaroni" mark. See Freedom Card, 432 F.3d at 470 ("The essence of a direct confusion claim is that a junior user of a mark attempts to free-ride on the reputation and goodwill of the senior user by adopting a similar or identical mark"). By using this text, Defendants do not merely draw attention to the Lazzaroni name. They shamelessly exploit the goodwill associated with that name.

At oral argument, Defendants argued that this text merely states historical facts, and that, while the family may have sold the macaroon business, they did not sell the family history. (Hr'g Tr. 42-43.) Defendants here pretend not to see the obvious: at best, they are ignoring the likelihood that consumers will be fooled by this text into thinking that the cookies in the box come from the same source as Plaintiff's cookies. The text clearly implies that these cookies are the famous Lazzaroni Amaretti di Saronno cookies, when they are not. Defendants' unfair use of Plaintiff's trademarks is so bold and so obvious as to be egregious. It appears likely that consumers will be confused.

           ii.       Is Defendants' use of "Lazzaroni" fair use?

Defendants contend that their use of "Lazzaroni" qualifies as fair use, because it is the family name. This argument suffers from a number of problems.

Under the Lanham Act, infringement of an incontestable mark is subject to the defense of fair use, defined as:

> the use of the name, term, or device charged to be an infringement is a use, otherwise than as a mark, of the party's individual name in his own business, or of the individual name of anyone in privity with such party[.]

15 U.S.C. § 1115. The first problem for Defendants is that, following the plain language of § 1115, Defendants' use is not fair use: the name Defendants have placed on the box, "Paolo Lazzaroni," is neither a party's individual name, nor the individual name of anyone in privity with a party. Rather, Defendants claim that "Paolo Lazzaroni & Figli, SpA" is the name of an Italian company owned by the Lazzaroni family. The CEO of P. Lazzaroni is named Luca Lazzaroni. (Lazzaroni Dec. ¶ 1.)

According to Mr. Lazzaroni, "Paolo Lazzaroni," as used in the company name, refers not

to a living individual associated with the business, but to his great, great grandfather, Paolo Lazzaroni.  (Id. at ¶ 8.)  In his declaration, Mr. Lazzaroni consistently refers to "Paolo Lazzaroni" as the "trade name" for the corporation and does not assert that it is the personal name of any living person associated with the corporation.  (Id. at ¶¶ 14, 15, 16, 18, 19, 20, 21.)

The T.T.A.B. has held that when a corporation adopts a surname as a corporate name or trademark, the name ceases to be a personal name.  Bellanca Aircraft Corporation v. Bellanca Aircraft Engineering, Inc., 190 U.S.P.Q. 158, 163 (T.T.A.B. 1976); American Brake Shoe Company v. R. B. Denison Manufacturing Co., 146 U.S.P.Q. 605, 609 n.6 (T.T.A.B. 1965).  See also LOUIS ALTMAN, 4 CALLMANN ON UNFAIR COMPETITION (4th ed.) § 22:35.  P. Lazzaroni is an Italian corporation.  (Lazzaroni Dec. ¶ 1.)   The name of the corporation is not entitled to fair use protection, pursuant to 15 U.S.C. § 1115, as a personal name.

A second problem stems from the modern rule in shared personal name cases which, according to McCarthy, favors enjoining a junior user's use: "if the junior user's use of a mark, even though it is his own name, is likely to cause confusion of customers, its use should be enjoined, or at least changed so as to eliminate confusion."  MCCARTHY § 13:8.  See also Basile, S.p.A. v. Basile, 899 F.2d 35 (D.C. Cir. 1990) (discussing the historical changes in judicial treatment of personal name cases).  Thus, even if this Court were to consider "Paolo Lazzaroni" to be a personal name, Defendants, as junior users of a mark likely to cause confusion, should be enjoined from its use.

        C.     *Additional arguments common to both marks*

            i.     Actual confusion

Defendants argue that the lack of any actual confusion in the several months both

products were sold is indicative of no likelihood of confusion in the future. Defendants' argument fails because: 1) Plaintiffs have submitted evidence of actual confusion (Kuczerewicz Reply Certification ¶¶ 3-4; DeMarco Reply Certification); and 2) the standard for trademark infringement is a likelihood of confusion, not actual confusion, as to the source of the goods. Fisons Horticulture, Inc. v. Vigoro Industries, Inc., 30 F.3d 466, 472 (3d Cir. 1994).

      ii.  Plaintiff has sanctioned Defendants' use

Defendants argue that D. Lazzaroni has sanctioned Defendants' use of the marks on its packaging. Defendants do not articulate the factual basis for this position, nor have they presented any evidence showing that either Plaintiff or its licensor has sanctioned Defendants' use. Rather, Defendants admit that D. Lazzaroni sued P. Lazzaroni in Italy to enjoin it from using the Lazzaroni name on the packaging of its macaroons, and that the Italian court substantially ruled in D. Lazzaroni's favor. (Lazzaroni Dec. ¶ 15, 16.) Defendants have shown no basis for a belief that either Plaintiff or its licensor has consented to its use of the marks.

Plaintiff has shown a likelihood of success in demonstrating that Defendants have infringed both the "Amaretti di Saronno" mark and the "Lazzaroni" mark. Defendants have not shown a likelihood of success in establishing any of their defenses to infringement.

  2.  Irreparable harm to Plaintiff

In the trademark context, irreparable harm may be presumed based on a showing of a likelihood of success on the merits, because a "lack of control over one's own mark amounts to irreparable harm." Times Mirror Magazines, Inc. v. Las Vegas Sports, 212 F.3d 157, 169 (3d Cir. 2000), cert. denied, 531 U.S. 1071 (2001). See also S & R Corp. v. Jiffy Lube Int'l, Inc., 968 F.2d 371, 378 (3d Cir. 1992) ("trademark infringement amounts to irreparable injury as a

matter of law").

Moreover, the Third Circuit has held that "[i]n a competitive industry where consumers are brand-loyal, we believe that loss of market share" is the kind of harm for which there may be no adequate remedy at law. Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharms. Co., 290 F.3d 578, 596 (3d Cir. 2002). Because, without injunctive relief, Plaintiff is likely to suffer a loss of market share, this supports a finding of a likelihood of irreparable harm.

Defendants argue that Plaintiff has delayed inexcusably and significantly in making the instant application, and that this undercuts the presumption of irreparable harm, but there does not appear to have been any significant delay. P. Lazzaroni admits that it did not distribute cookies to the U.S. market until it sold them to B&R on June 16, 2005. (Lazzaroni Dec. ¶ 29.) Plaintiff claims that it first became aware that P. Lazzaroni was selling amaretti in the United States in July of 2005. (Ecoffey Reply Cert. ¶ 12.) Plaintiff filed a Complaint and an application for a preliminary injunction against Steiner Foods on September 14, 2005, and amended the Complaint to include P. Lazzaroni and B&R on September 26, 2005. Plaintiff filed the instant application for a preliminary injunction on December 23, 2005. There has been no undue delay.

    3.    <u>Irreparable harm to Defendants</u>

Defendant will not likely suffer irreparable harm if a preliminary injunction is issued due to their recent appearance in the marketplace and their ability to redesign their packaging. Moreover, "the injury a defendant might suffer if an injunction were imposed may be discounted by the fact that the defendant brought that injury upon itself." Novartis, 290 F.3d at 596.

Defendant P. Lazzaroni appears to have brought the injury upon itself by using the marks on its packaging for the U.S. market, despite the fact that D. Lazzaroni's ownership of the marks in the United States is a matter of public record, and the fact that D. Lazzaroni had already sued to enjoin infringement of its trademarks in Italy.

   4.  The public interest

"Where a likelihood of confusion arises out of the concurrent use of a trademark, the infringer's use damages the public interest." Jiffy Lube, 968 F.2d at 379. Because Plaintiff has shown a likelihood of consumer confusion, the public interest factor weighs in favor of granting the injunction.

   5.  Weighing the equities

Having considered the four factors of the preliminary injunction analysis, this Court determines that all factors favor granting injunctive relief. This conclusion is supported by weighing the equities in this case. Analysis of the equities directs attention to an important aspect of the case: the accused infringer sold the business to Plaintiff's licensor. In this case, this tilts the balance heavily in favor of granting the injunction.

Plaintiff asserts that when the Lazzaroni family sold the D. Lazzaroni macaroon business to Campbell's in 1984, the goodwill, reputation, and trademark rights were sold along with it. (Tombetti Reply Certification at ¶ 9.) At oral argument, Defendants admitted that they had offered no evidence to dispute this. (Hr'g Tr. 23-24.) Moreover, Defendants admitted that P. Lazzaroni is bound by the terms of the sale. (Hr'g Tr. 26.) This Court finds a likelihood that Plaintiff will succeed in proving its claims about the sale at trial. It thus appears that the Lazzaroni family sold the right to use its name to sell macaroons, and now wants to exercise the

right it sold.

The Second Circuit addressed a similar situation in Levitt Corp. v. Levitt, 593 F.2d 463, 468 (2d Cir. 1979). In that case, William Levitt, the famous builder of Levittown, transferred for value the construction company bearing his name to Levitt Corporation. In so doing, he transferred the trademarks and goodwill associated with the business. After the expiration of a non-compete provision, Levitt began to create and sell new housing developments which he named "Levittown," publicizing his role as the builder of the original Levittown. Levitt Corporation sued, seeking an injunction to bar Levitt from this use of his name. The district court found trademark infringement and granted injunctive relief, and the Second Circuit affirmed: "Where, as here, however, the infringing party has previously sold his business, including use of his name and its goodwill, to the plaintiff, sweeping injunctive relief is more tolerable." The Court explained its analysis of the equities as follows:

> The value of goodwill obviously becomes diluted and sales lost if confusion arises in the mind of the public over the source of the reputable goods or services. To protect the property interest of the purchaser, then, the courts will be especially alert to foreclose attempts by the seller to keep for himself the essential thing he sold, and also keep the price he got for it. And if the district court finds that the seller has attempted to arrogate to himself the trade reputation for which he received valuable consideration, broad remedies may be effected to restore to the plaintiff the value of his purchase.

Id.

Much like Levitt, in the instant case the accused infringer sold the business to the Plaintiff's licensor, including the trademarks and goodwill associated with the business. The evidence presented at this early stage in the litigation suggests that the Lazzaroni family, the seller, is attempting to keep for itself both that which it sold and the price that it got for it. Following the Second Circuit's reasoning, broad remedies are appropriate here to restore to the

16

Plaintiff and its licensor the value of the purchase.

Lastly, as stated by the California Court of Appeals, "one must use his own name honestly and not as a means of pirating the goodwill and reputation of a business rival." <u>Hoyt Heater Co. v. Hoyt</u>, 68 Cal. App. 2d 523, 527 (Cal. Ct. App. 1945).  The evidence presented this far suggests that Defendants' use of the "Lazzaroni" name likely constitutes piracy of the goodwill of a business rival.  The equities weigh in favor of injunctive relief.

## CONCLUSION

This Court finds that Plaintiff has shown a likelihood of success on the merits and irreparable harm by Defendants' conduct.  Considering these factors together with the potential harm to Defendants and the public interest, all factors weigh in favor of granting Plaintiff's application for injunctive relief.  Plaintiff's application for a preliminary injunction is granted.  An appropriate Order is attached.


   S/Joseph A. Greenaway, Jr.
JOSEPH A. GREENAWAY, JR., U.S.D.J.


Dated: April 10, 2006